**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ANTWANE JOHNSON, 2009 Saint Thomas Dr. #200 Waldorf MD, 20602, individually and on behalf of a class of all persons and entities similarly situated,<br><br><br>    *Plaintiff*,<br>v.<br><br>HARTFORD FUNDING, LTD., 100 Crossways Park Drive West, Suite 302, Woodbury, New York 11797<br><br>    *Defendant*. | Civil Case No.:<br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

**Preliminary Statement**

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans "outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers" *id.* § 2(6), and sought to strike a balance between "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms" *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry

stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.      Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Hartford Funding, Ltd. ("Hartford Funding") sent unsolicited telemarketing text messages to numbers on the National Do Not Call Registry, including his own.

4.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5.      Plaintiff Antwane Johnson is an individual and a resident of the State of Maryland.

6.      Defendant Hartford Funding, Ltd. is a corporation with its principal place of business at 100 Crossways Park Drive West, Suite 302, Woodbury, New York 11797.

**Jurisdiction & Venue**

7.     The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

8.     The Court has personal jurisdiction over Hartford Funding because it conducts business in this District, including transmitting the unlawful telemarketing text messages at issue to Plaintiff's cellular telephone number in this District, and otherwise has sufficient minimum contacts with this District.

9.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including Plaintiff's receipt in this District of the unlawful telemarketing text messages at issue.

**The Telephone Consumer Protection Act**

**10.**     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The National Do Not Call Registry</u>

11.     § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

12.     The National Do Not Call Registry allows consumers to register their telephone

numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.

*See* 47 C.F.R. § 64.1200(c)(2).

13.     A listing on the Registry "must be honored indefinitely, or until the registration is

cancelled by the consumer or the telephone number is removed by the database administrator."

*Id.*

14.     The TCPA and implementing regulations prohibit the initiation of telephone

solicitations to residential telephone subscribers to the Registry and provides a private right of

action against any entity that makes those calls, or "on whose behalf" such calls are made.  47

U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

15.     For purposes of the TCPA and the National Do Not Call Registry, a text message
sent to a wireless telephone number is a "call."  *See Satterfield v. Simon & Schuster, Inc.*, 569
F.3d 946, 954 (9th Cir. 2009); *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd.
14014, 14115 ¶ 165 & n.463 (2003).

### Factual Allegations

**16.**     Hartford Funding offers residential mortgage lending, refinancing, and home
equity line of credit ("HELOC") services.

**17.**     One of Hartford Funding's strategies for marketing its services and generating
new customers is the sending of telemarketing text messages to consumers' cellular telephones.

**18.**     Recipients of these text messages, including Plaintiff, did not consent to receive
them.

Text Messages to Mr. Johnson

19.     Mr. Johnson is, and at all times mentioned herein was, a "person" as defined by
47 U.S.C. § 153(39).

20.     Mr. Johnson's cellular phone number, (301) 659-XXXX, has been on the National
Do Not Call Registry since May 4, 2012.

21.     Mr. Johnson has never provided his written consent to receive telemarketing text
messages from the Defendant.

22.     Despite this, Plaintiff received three telemarketing text messages from Hartford
Funding, sent from telephone number (267) 843-8293, on June 16, 2026, June 24, 2026, and
June 29, 2026.

23.     A screenshot of the messages is shown below:



24.     Each of these text messages was addressed to "Darryl," a name that is not Plaintiff's, yet each was sent to Plaintiff's cellular telephone number, further demonstrating that Hartford Funding's telemarketing text messages are transmitted without regard to whether the recipient consented to receive them or whether the recipient's number was listed on the National Do Not Call Registry.

25.     The privacy of Mr. Johnson and the putative class members was infringed upon because the telemarketing text messages were unwanted.

### Class Action Statement

26.     Plaintiff brings this action on behalf of himself and the following classes (collectively, the "Classes") pursuant to Federal Rule of Civil Procedure 23:

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of Defendant (3) within a

12-month period (4) from the four years prior to the filing of the complaint through the date of trial.

**Maryland Class:** All persons in the State of Maryland to whom (1) Defendant sent, or caused to be sent, one or more telephone solicitations by text message using an automated system for the selection or dialing of telephone numbers, (2) without the recipient's prior express written consent, (3) from the three years prior to the filing of the Complaint through the date of trial.

27.    Defendant and its employees or agents are excluded from the Classes. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

**28.**    Plaintiff brings all claims in this action individually and on behalf of Class Members against Defendant.

### Numerosity

29.    Members of the Classes are so numerous that their individual joinder is impracticable.

30.    On information and belief, based on the technology used to send text messages to Plaintiff, which is used to send text messages *en masse*, Members of the Classes number in the thousands.

31.    The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

32.    Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

### Commonality

33.    Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.

**34.**    Common legal and factual questions include, but are not limited to, whether Defendant has violated the Telephone Consumer Protection Act and/or the Maryland Telephone Solicitations Act, and whether Class Members are entitled to actual and/or statutory damages for the aforementioned violations.

### Typicality

**35.**    The claims of the named Plaintiff are typical of the claims of the Classes because the named Plaintiff, like all other Class Members, received unsolicited telemarketing text messages from the Defendant without giving Defendant his consent to receive such text messages.

### Adequacy of Representation

36.    Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Class Members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.

**37.**    The interests of Class Members will be fairly and adequately protected by Plaintiff and his counsel.

### Superiority

38.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.

39.    Many of the Class Members likely lack the ability and/or resources to undertake the burden and expense of individually prosecuting what may be a complex and extensive action to establish Defendant's liability.

40.    Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system.  This strain on the parties and the judicial system would be heightened in this case, given the complex legal and factual issues at play.

41.    Individualized litigation also presents a potential for inconsistent or contradictory judgments.

42.    In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.

43.    Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the National DNC Class)**

44.    Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

45.    The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing text messages, except for emergency purposes, to the Plaintiff and the National DNC Class despite their numbers being on the National Do Not Call Registry.

46.    The Defendant's violations were negligent, willful, or knowing.

47.    As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and

8

members of the National DNC Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every text message sent.

48.    Plaintiff and members of the National DNC Class are also entitled to and do seek injunctive relief prohibiting Defendant from sending telemarketing text messages to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## COUNT II
### Maryland Telephone Solicitations Act (Stop the Spam Calls Act)
### (Violation of Md. Code Ann., Com. Law § 14-4502)
### (On Behalf of Plaintiff and the Maryland Class)

49.    Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

50.    Defendant markets HELOCs, mortgage refinancing, and other residential lending products through large-scale SMS marketing campaigns directed to consumers, including Plaintiff and other members of the Maryland Class residing in the State of Maryland.

51.    On information and belief, Defendant utilized a commercial automated text messaging platform capable of selecting stored telephone numbers from Defendant's customer and prospect databases and automatically transmitting substantially identical marketing text messages to those numbers, including the telephone numbers of Plaintiff and the Maryland Class, without human intervention as to each individual message.

52.    The platform selected Plaintiff's telephone number from Defendant's marketing database and automatically transmitted the text message solicitations at issue to Plaintiff.

53.    The text messages Plaintiff received were substantially identical in wording and format to messages transmitted to other prospective customers as part of Defendant's organized telemarketing campaign.

9

54. The text messages contained standardized advertising copy promoting Defendant's HELOC and cash-out refinance products.

55. Defendant did not manually compose or individually send each text message to Plaintiff. Instead, Defendant caused the text messages to be transmitted through an automated messaging platform that selected telephone numbers from its databases and distributed marketing solicitations in bulk.

56. Plaintiff's telephone number, (301) 659-XXXX, carries a Maryland area code, giving rise to a rebuttable presumption under Md. Code Ann., Com. Law § 14-4503(b) that the text messages at issue were made to a Maryland resident.

57. Plaintiff never gave Defendant his "prior express written consent," as that term is defined in Md. Code Ann., Com. Law § 14-4501, to receive the text message solicitations at issue.

58. By causing telephone solicitations to be made to Plaintiff and members of the Maryland Class using an automated system for the selection or dialing of telephone numbers, without their prior express written consent, Defendant violated Md. Code Ann., Com. Law § 14-4502(a).

59. Defendant's violations were negligent, willful, or knowing.

60. Pursuant to Md. Code Ann., Com. Law § 14-4503, Plaintiff and members of the Maryland Class are entitled to enjoin further violations and to recover damages of up to $500 per violation or their actual damages, whichever is greater, and, if the Court finds that Defendant's violations were willful or knowing, up to three times that amount.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendant from sending telemarketing text messages advertising its goods or services, except for emergency purposes, to numbers on the National Do Not Call Registry, in the future;

B. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

D. An order enjoining Defendant from causing further telephone solicitations to be made to Plaintiff and members of the Maryland Class using an automated system for the selection or dialing of telephone numbers without their prior express written consent, pursuant to Md. Code Ann., Com. Law § 14-4503;

E. An award to Plaintiff and members of the Maryland Class of damages pursuant to Md. Code Ann., Com. Law § 14-4503 of up to $500 per violation or their actual damages, whichever is greater, trebled if the Court finds that Defendant's violations were willful or knowing; and

F. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.


Dated: July 16, 2026　　　　　　　　　　PLAINTIFF, on behalf of himself

and others similarly situated,


*/s/ John McGowan*
John McGowan, Bar Id. No. 1306190201
Managing Member
Kinner & McGowan, PLLC
413 East Capital St. SE
Washington, DC 20003
(202) 846-7148
jmcgowan@kinnermcgowan.com


*/s/ Alex N. Jilizian*
Alex N. Jilizian, *Subject to Pro Hac Vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
alex@paronichlaw.com